## UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION

| | | |
|---|---|---|
| JOHNNY COOPER, On Behalf of Himself and All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. _____ |
| v. | ) ) ) | JURY TRIAL DEMANDED |
| CRESTWOOD MIDSTREAM PARTNERS, L.P., CRESTWOOD GAS SERVICES GP LLC, CRESTWOOD HOLDINGS LLC, ROBERT G. PHILIPS, JOHN W. SOMERHALDER II, J. HARDY MURCHISON, TIMOTHY H. DAY, PHILIP D. GETTIG, ALVIN BLEDSOE VANESSA GOMEZ LAGATTA, MICHAEL G. FRANCE, JOEL CHRISTIAN LAMBERT, INERGY MIDSTREAM, L.P., INTREPID MERGER SUB, LLC, NRGM GP, LLC, and INERGY, L.P., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTY |
| Defendants. | ) ) ) | |

Plaintiff, Johnny Cooper (the "Plaintiff"), on behalf of himself and all others similarly situated, by his attorneys, alleges the following upon information and belief, except as to those allegations pertaining to Plaintiff which are alleged upon personal knowledge:

## NATURE AND SUMMARY OF THE ACTION

1.      Plaintiff brings this action individually and on behalf of the unitholders of Crestwood Midstream Partners, L.P. ("Crestwood" or the "Company") to enjoin the acquisition of the publicly owned units of Crestwood by Inergy Midstream, L.P., ("Inergy Midstream"), NRGM GP, LLC ("NRGM") and Inergy, L.P. ("Inergy") through Intrepid Merger Sub, LLC ("Merger Sub"), Inergy Midstream's wholly-owned subsidiary, for inadequate consideration as detailed herein (the "Proposed Transaction").   On May 6, 2013, Crestwood and Inergy Midstream announced that they had entered into a definitive Agreement and Plan of Merger (the

"Merger Agreement") pursuant to which Crestwood unitholders will receive 1.07 units of Inergy Midstream and $1.03 in cash for each common unit of Crestwood they own (the "Exchange Ratio").  There is no protective collar on the Exchange Ratio.  The Proposed Transaction is valued at approximately $7 billion but is ***only a meager 5% premium*** to the 20-day volume weighted average price of Crestwood's common units.  Following consummation of the Proposed Transaction, Crestwood unitholders will be substantially diluted, holding approximately 24.4% of the combined company.

2.      The Proposed Transaction is structured as a three-step transaction.  First, Crestwood Holdings LLC ("Crestwood Holdings"), an affiliate of Crestwood, will acquire NRGY, the general partner of Inergy for $80 million in cash.  Prior to the closing of this deal, however, Inergy will distribute to its unitholders all 56.4 million common units that it owns in Inergy Midstream.  Crestwood Holdings will transfer to Inergy all of its interest in Crestwood Gas Services GP, LLC ("Crestwood Gas"), the general partner of Crestwood (which also owns 100% of the incentive distribution rights of Crestwood), in exchange for 35.1 million common units and 4.4 million subordinated units of Inergy.  Subject to the closing of the second transaction, Crestwood Holdings will then have the option to contribute to Inergy 7.1 million Inergy Midstream common units it receives in the merger of Crestwood and Inergy Midstream in exchange for 14.3 million common units of Inergy.  As a result, Crestwood Holdings will own 29% of Inergy's common units outstanding.  Crestwood will be merged into a subsidiary of Inergy Midstream whereby Crestwood public unitholders will receive, in exchange for each unit of Crestwood, 1.07 units of Inergy Midstream and a one-time cash payment of $1.03 per unit. The Proposed Transaction is conditioned upon the closing of the first and second transactions.

3.     First Reserve GP XI, Inc. ("First Reserve"), a private equity fund, of which certain of the Individual Defendants (as defined herein) including J. Hardy Murchison ("Murchison"), Timothy H. Day ("Day"), Michael G. France ("France") and Joel Christian Lambert ("Lambert") are employed, holds approximately 43% of the Company's limited partner units.  First Reserve has entered into a voting agreement (the "Voting Agreement") to Vote its Crestwood units in favor of the Proposed Transaction.

4.     The Proposed Transaction represents inadequate consideration, in a process that is tainted by conflict and is procedurally flawed.  Each of the Defendants, as defined herein, violated applicable law by directly breaching and/or aiding the other defendants' breaches of their fiduciary duties of loyalty, due care, independence, good faith, fair dealing and complete candor.

5.     In mid-January 2013, Greenhill & Co. ("Greenhill"), the financial advisor to NRGY and Inergy Midstream approached First Reserve to gauge its interest in supporting a possible transaction between Crestwood and Inergy Midstream.  Between February 11th and 12th, 2013, Crestwood, Greenhill and First Reserve held initial discussions regarding a possible merger.

6.     On March 12, 2013 Greenhill sent to Crestwood a summary of preliminary transactional terms.  Importantly, prior to the financial terms being negotiated, Defendant Robert G. Philips ("Philips"), Chairman, President and CEO of Crestwood, **negotiated for himself** a position with the surviving entity where he would serve as Chairman, President and CEO.  On April 1, 2013, almost a month after Philips negotiated his new position with the surviving entity, Inergy Midstream agreed to a 100% unit-for-unit exchange with a premium not to exceed 5%

and a one-time cash payment in an amount not to exceed $25 million.  From March through May of 2013 **no increase** in the Exchange Ratio was negotiated between the parties.

7.     On April 15, 2013, almost two months after Philips had already negotiated for himself a position with the surviving entity and material terms on price were agreed to between Crestwood, First Reserve and Inergy Midstream, the Board of Directors of Crestwood, here and hereafter (the "Board), authorized the Crestwood Conflicts Committee to evaluate and consider granting "Special Approval" of the Proposed Transaction.  The Board's rationale for taking such action included the **"potential conflicts of interest"** that existed within the Proposed Transaction.  However, prior to April 2013, the Crestwood Conflicts Committee did not have authorization from the Board to participate in the process or secure its own financial advisor.

8.     Even while the Conflict Committee of the Crestwood Board of Directors ("Crestwood Conflicts Committee") was authorized to evaluate and consider the Proposed Transaction, on April 21st and April 22nd, Philips held further discussions alone with John J. Sherman ("Sherman"), Chairman and CEO of Inergy and Inergy Midstream, regarding **key issues** raised in the merger documents.  Following this meeting, and without any input, the Crestwood Conflicts Committee was informed that these discussions took place.

9.     On April 24, 2013, the Crestwood Conflicts Committee instructed Evercore Partners ("Evercore"), the exclusive financial advisor to the Crestwood Conflicts Committee, to reach out to Crestwood management to discuss improving the terms of the Proposed Transaction.  Specifically, the Crestwood Conflicts Committee sought increased consideration to unitholders and the inclusion of a "majority-of-the-minority" provision in the Merger Agreement that would

allow Crestwood's minority shareholders, excluding the Crestwood Affiliated Entities[1], a meaningful vote on the Proposed Transaction (the "Proposals").

10.     The Crestwood Conflicts Committee's efforts were immediately thwarted by Philips.  On April 29, 2013, the Crestwood Conflicts Committee, First Reserve and Crestwood management held a meeting to discuss the Committee's Proposals.  Philips communicated that "[he] was concern[ed] with regard to the request by the Crestwood Conflicts Committee for additional consideration for the unitholders other than the Crestwood Affiliated Entities" and that "he did not believe that it would be feasible to request that the proposed merger be submitted for approval by a majority of the units held by the unitholders other than the Crestwood Affiliated Entities given the advance stage of the negotiations with Inergy . . ." Philips' refusal to consider these modest Proposals demonstrates that Philips lacked independence and breached his duty of loyalty to Crestwood's unitholders.

11.     On May 3, 2013 Philips met with Sherman without either the Crestwood Conflicts Committee or Evercore, the Crestwood Conflicts Committee's financial advisor, present. Defendant Philips confirmed the financial terms contained in the Merger Agreement.  Upon information and belief Defendant Philips did not discuss with Sherman any of the modest Proposals recommended by the Crestwood Conflicts Committee.  Instead, he simply confirmed the terms that were agreed upon almost two month prior and before the Crestwood Conflicts Committee received authority to consider the Proposed Transaction.  Following this meeting, Philips informed the Crestwood Conflicts Committee in response to their counter-proposal that the Crestwood Affiliated Entities would forego the cash consideration it was to receive and would provide a $10 million dollar cash payment to Crestwood common unitholders.

---

[1] "Crestwood Affiliated Entities" means Crestwood Holdings, CMLP GP and Crestwood Gas.

12.     Defendants locked-up the Proposed Transaction by agreeing to certain deal-protection devices that unfairly favor Inergy Midstream and discourage potential bidders from submitting a superior bid for the Company.   Most notably, the Merger Agreement does not contain a "go-shop" provision, which would allow Crestwood to solicit proposals from third parties.   Rather, the Merger Agreement includes an array of deal protection devices that include (i) a non-solicitation or "no-shop" provision that prohibits the Company from seeking superior bids; (ii) a matching rights provision allowing Inergy Midstream to match any competing bidders' superior proposal for Crestwood; and (iii) a termination fee of $50.8 million, which is excessively high for this type of transaction.

13.     In addition, in connection with the Proposed Transaction, on May 29, 2013 Inergy Midstream filed a Schedule S-4 ("Registration Statement") with the U.S. Securities and Exchange Commission ("SEC") that failed to make all material disclosures and contained materially misleading statements about the Proposed Transaction.   As explained below, the Registration Statement exposes some details of the highly flawed sales process, but fails to disclose a myriad of material facts concerning the Proposed Transaction.   The Registration Statement omits and/or misrepresents material information concerning, among other things: (i) the sales process and the process by which the Board entered into the Proposed Transaction; (ii) the data and key inputs underlying the financial valuation exercises that purport to support the fairness opinion ("Fairness Opinion") provided by, Evercore, the Crestwood Conflicts Committee's financial advisor; and (iii) certain financial projections prepared by Crestwood management and relied upon by Evercore in rendering its Fairness Opinion.

14.     For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction or, in the event the

Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' violations of their fiduciary duties of loyalty, good faith, due care and complete candor.

## JURISDICTION AND VENUE

15.     Each of the Individual Defendants owes fiduciary duties of loyalty, good faith, fair dealing, due care and complete candor to Plaintiff and the other members of the Class (defined below).  They are acting in concert with one another in violating their fiduciary duties as alleged herein, and, specifically, in connection with the Proposed Transaction.

16.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a), (c), and (d) as Plaintiff and the defendants are citizens of and domiciled in different states and the amount in controversy exceeds $75,000, exclusive of interests and costs.  Given that the Proposed Transaction is valued at $7 billion, the injunctive relief sought herein will exceed a sum or value of $75,000.  This action is not a collusive one to confer jurisdiction on this Court.

17.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because one or more of the defendants, including Crestwood, either resides in or maintains executive offices in this District, and a substantial portion of the transactions and wrongs that are the subject of this complaint, occurred in substantial part in this District.  Finally, the Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

18.     Plaintiff is, and has been at all relevant times, a unitholder of Crestwood units.

19.     Defendant Crestwood is a Delaware limited partnership, with its corporate headquarters located at 700 Louisiana Street, Suite 2060, Houston, Texas 77002.  Crestwood engages in the gathering, processing, treating, compressing, transporting, and selling natural gas

in the United States.  Crestwood's units trade publicly on the NYSE under the ticker symbol "CMLP."

20.     Defendant Crestwood Gas is a Delaware limited liability company.  Crestwood Gas is a general partner of Crestwood.

21.     Defendant Crestwood Holdings is a Delaware limited liability company. Crestwood Holdings is the sole member of Crestwood Gas Services Holdings LLC, which is the sole member of Crestwood Gas.

22.     Defendant Philips has been the President, Chief Executive Officer and Chairman of the Board for Crestwood since October 2010.  Philips is also the President, Chief Executive Officer and Chairman of the Board for Crestwood Holdings Partners LLC and Crestwood Midstream Partners LLC and has served in those roles since November 2007.  Philips has served as the Chief Executive Officer of Crestwood Gas since October 2010.  Following the closing of the Proposed Transaction, Philips will become the Chairman, President and CEO of the surviving entity.

23.     Defendant John W. Somerhalder II ("Somerhalder") has been a director of the Company since October 2010.  Somerhalder has also been a director of Crestwood Gas since July 2007.

24.     Defendant Murchison has been a director of the Company and Crestwood Gas since October 2010.  Murchinson is employed by First Reserve who holds approximately 43% of the Company's units.

25.     Defendant Day has been a director of the Company and Crestwood Gas since October 2010.  Day is also employed by First Reserve who holds approximately 43% of the Company's units.

26.     Defendant Philip W. Cook ("Cook") has been a director of the Company since September 2011.  Cook has also been a director of Crestwood Gas since January 2007.

27.     Defendant Philip D. Gettig ("Gettig") has been a director of the Company since October 2010.  Gettig has also been a director of Crestwood Gas since July 2007.

28.     Defendant Alvin Bledsoe ("Bledsoe") has been a director of the Company since October 2010.  Bledsoe has also been a director of Crestwood Gas since July 2007.

29.     Defendant Vanessa Gomez Lagatta ("Lagatta") has been a director of the Company since August 2012.

30.     Defendant France has been a director of the Company and Crestwood Gas since October 2010.   France is employed by First Reserve who holds approximately 43% of the Company's units.

31.     Defendant Lambert has been a director of the Company and Crestwood Gas since October 2010.  Lambert is employed by First Reserve who holds approximately 43% of the Company's units.

32.     Defendants Philips, Somerhalder, Murchison, Day, Cook, Gettig, Lagatta, France and Lambert are collectively referred to hereinafter as the "Individual Defendants."

33.     Each of the Individual Defendants herein is sued individually, and in his or her capacity as a director of the Company, and the liability of each rises from the fact that he or she has engaged in all or part of the unlawful acts, plans, schemes, or transactions complained of herein.

34.     Defendant Inergy Midstream, founded in 2005 and based in Kansas City, Missouri, is a Delaware limited partnership that engages in acquiring, owning, developing, and operating midstream energy assets.   The company is primarily involved in the storage and

transportation of natural gas and natural gas liquids in the northeast region of the United States. It owns and operates four (4) natural gas storage facilities located in New York and Pennsylvania with an aggregate working gas storage capacity of 41.0 billion cubic feet with high peak injection and withdrawal capabilities; natural gas pipelines located in New York and Pennsylvania with 30 million cubic feet per day of intrastate transportation capacity; and 1.5 million barrel natural gas liquids storage facility located near Bath, New York.  NRGM serves as the general partner of the Inergy Midstream.  Inergy Midstream units trade publically on the NYSE under the ticker symbol "NRGM."

35.     Defendant Merger Sub is a Delaware limited liability company and wholly-owned subsidiary of Inergy Midstream that was formed solely in contemplation of the merger, has not commenced any operations, has no assets and has no liabilities or contingent liabilities, nor any outstanding commitments other than as set forth in the Merger Agreement.  Following the closing of the Proposed Transaction, Merger Sub will cease to exist as a separate corporate entity.

36.     Defendant NRGM is a Delaware limited liability company and a general partner of Inergy Midstream.

37.     Defendant Inergy is a Delaware limited partnership and is a general partner of Inergy Midstream which also has a majority equity ownership interest in Inergy Midstream.

38.     Collectively, the Individual Defendants, Crestwood, Crestwood Gas, Crestwood Holdings, Inergy Midstream, Merger Sub, NRGM and Inergy are referred to herein as the "Defendants."

## CLASS ACTION ALLEGATIONS

39.     Plaintiff brings this action individually and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all holders of Crestwood common units who

are being and will be harmed by Defendants' actions described below (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendants.

40.   This action is properly maintainable as a class action for the following reasons:

a.   The Class is so numerous that joinder of all members is impracticable. While the exact number of members of the Class is unknown to Plaintiff at this time and can be ascertained through appropriate discovery, as of April 29, 2013, approximately 53,764,924 units of the Company's common units were outstanding.  The holders of these units are believed to be geographically dispersed throughout the United States;

b.   There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member.   The common questions include, *inter alia* the following:

    i.   Whether the Individual Defendants have breached their fiduciary duties of undivided loyalty, independence or due care with respect to Plaintiff and the other members of the Class in connection with the Proposed Transaction;

    ii.   Whether the Individual Defendants have breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of Plaintiff and the other members of the Class in connection with the Proposed Transaction;

    iii.   Whether the Individual Defendants have breached any of their fiduciary duties to Plaintiff and the other members of the Class in connection with the Proposed Transaction, including the duties of good faith, diligence, and fair dealing;

    iv.   Whether the Individual Defendants are engaging in self-dealing in connection with the Proposed Transaction under Texas state law;

    v.   Whether the Individual Defendants have failed to fully disclose to Plaintiff and the Class all material information necessary to make an informed decision regarding the Proposed Transaction;

      vi.       Whether the Individual Defendants, in bad faith and for improper motives, have impeded or erected barriers to discourage other offers for the Company or its assets; and

      vii.     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the transactions complained of herein consummated.

c.      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

d.      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

e.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede the ability to protect their interests; and

f.      Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### A.    Background

41.      Formerly known as "Quicksilver Gas Services LP," Crestwood, is a midstream oil and natural gas master limited partnership which provides comprehensive services to natural gas producers, including fee-based natural gas gathering, processing, treating, compressing and transporting.  Crestwood services natural gas producers located in the Barnett Shale in north Texas, the Marcellus Shale in northern West Virginia, the Fayette Shale in northwest Arkansas,

the Granite Walsh region of the Texas Panhandle, the Avalon Shale/Bone Spring in southeastern New Mexico and the Haynesville/Bossier Shale in western Louisiana.  As of December 31, 2012, the Company manages approximately 849 miles of natural gas gathering pipelines, natural gas liquids ("NGLs"), gas lift, residue and production lines.  In the past several years, Crestwood's success has been demonstrated by the Company's significant growth.  Significant milestones in the Company's growth include:

- The April 1, 2011 purchase of midstream assets from Frontier Gas Services, LLC which included a 127-mile high pressure and low pressure gathering pipeline system based in Fayetteville Shale and a 28-mile pipeline system Granite Walsh region of the Texas Panhandle;

- The November 1, 2011 acquisition of Tristate Sabine, LLC, which included 61 miles of high pressure natural gas pipelines and carbon dioxide treating facilities based in Sabine Parish, Louisiana;

- The August 27, 2012 acquisition of gathering and processing assets from Devon Energy Corporation. The acquired assets are located in the southwestern area of the Barnett Shale and include a 74 mile low pressure rich natural gas gathering system, a cryogenic processing facility with capacity of 100 million cubic feet per day and 23,100 horsepower of compression equipment; and

- The January 1, 2013 acquisition of assets from Enerven Compression LLC for $95 million which include four compression and dehydration stations located in the Harrison and Doddridge countries of West Virginia.

42.    The Company's success has also been reflected in its favorable financial results. On November 6, 2012, the Company released a press release announcing the Company's third quarter financial results.  In the press release commenting on the Company's third quarter results, Crestwood reported:

- Record adjusted earnings before interest, taxes, depreciation, amortization and accretion ("Adjusted EBITDA") of $32.0 million, up 12% from the $28.5 million reported in the second quarter 2012, on 9% higher gathering volumes on Crestwood's 100% owned gathering systems and 13% higher gathering volumes on Crestwood's 35% owned Marcellus Shale pipelines;

- Record adjusted distributable cash flow of $25.2 million, up 22% from the $20.6 million reported for the second quarter 2012;

- A quarterly distribution increase with respect to the third quarter 2012 of $0.51 per common unit (equivalent to $2.04 per common unit on an annualized basis), representing a 6.3% increase compared to the distribution paid with respect to the third quarter 2011; and

- An improvement in distribution coverage ratio to 1.0x for the current quarter compared to 0.85x in the second quarter 2012.

43.     On February 26, 2013, the Company announced its financial results for the fourth quarter and full year 2012, again reporting growth.  In its press release, the Company stated:

- Reported adjusted earnings before interest, taxes, depreciation, amortization and accretion ("Adjusted EBITDA") of $119.3 million for the year ended December 31, 2012, a 9% increase compared to the $110.0 million reported for the year ended 2011;

- Adjusted EBITDA was $30.5 million for the fourth quarter 2012, which was consistent with the fourth quarter 2011;

- Reported adjusted distributable cash flow of $91.2 million for the year ended December 31, 2012, a 4% increase from 2011;

- Adjusted distributable cash flow was $23.3 million for the fourth quarter 2012, which was consistent with the fourth quarter 2011;

- Improved liquidity through the issuance of additional senior notes, and increased the maximum borrowing capacity and extended the maturity date of its revolving credit facility; and

- Paid total cash distributions of $2.02 per common unit for the year ended 2012; an 8% increase compared to distributions paid for the year ended 2011. The cash distribution of $0.51 per common unit for the fourth quarter 2012 was 4% higher than the distribution paid for the fourth quarter 2011.

44.     In the press release announcing Crestwood's fourth quarter and full year 2012 results, Philips stated: "When looking back at 2012, we are pleased with the results of several highly successful acquisitions and the continued growth of our organization to strategically reposition Crestwood into high growth rich gas plays."  He further emphasized that:

With a full year contribution from the 2012 acquisitions and expected volume growth in the Marcellus Shale, we believe 2013 will be another transition year but will likely deliver significant improvement over 2012 as our 2013 guidance reflects. Importantly, Crestwood's record organic capital expenditures forecasted in our 2013 budget should provide substantial earnings growth visibility in 2014 and support a quicker return to our traditional 8-10% per year distribution growth objectives.  (emphasis added).

**B.      Inergy Midstream Approaches First Reserve About Possible Transaction With Crestwood**

45.      In mid-January 2013, Greenhill, the financial advisor to NRGY and Inergy Midstream approached First Reserve to gauge its interest in supporting a possible transaction between Crestwood and Inergy Midstream.  Between February 11th and 12th, 2013, Crestwood, Greenhill and First Reserve held initial discussions regarding a possible merger.

46.      On February 14, 2013, Philips held a meeting with the Crestwood Conflicts Committee regarding his initial meetings with Inergy Midstream.  On February 25, 2013, Crestwood sent a non-binding letter of interest to Greenhill indicating that the Company was interested in further discussions regarding a possible merger between the two entities.  Also, on this date, Crestwood retained Citigroup Global Markets Inc. ("Citi") to act as the Company's financial advisor.

47.      On March 6, 2013, Philips and Sherman held their first meeting to discuss a possible merger between Crestwood and Inergy Midstream.  Following this meeting, Greenhill indicated that Inergy Midstream was interested in continuing discussions about a possible merger between the two entities.

48.      On March 12, 2013, Greenhill sent to Crestwood a summary of preliminary transactional terms, amongst others, including: a 100% unit-for-unit exchange at a 2% premium to the 20-day trailing volume-weighted average price; Crestwood Holdings would acquire NRGY for a cash payment to be determined later; and Crestwood Affiliated Entities would agree

to vote their units or 42.3% of the total voting power in Crestwood in favor of any transaction. Importantly, prior to the financial terms being negotiated, Defendant Philips **negotiated for himself** a position with the surviving entity where he would serve as Chairman, President and CEO.

49.     On March 14, 2013, Crestwood sent a counter-proposal to Greenhill providing its response to Inergy Midstream's preliminary transactional terms.  Crestwood agreed to a 100% unit-for-unit exchange, but at a 5% premium to the 20-day trailing volume-weighted average price and a one-time cash payment to Crestwood Affiliated Entities in exchange for them voting in favor of the Proposed Transaction.

50.     On March 20, 2013, Crestwood received a revised proposal from Greenhill regarding the terms surround a possible transaction.  Inergy Midstream agreed to increase the exchange ratio to 2.5% premium and a one-time cash payment in an aggregate amount not to exceed $12.5 million.  On March 21, 2013 Crestwood sent a revised proposal to Greenhill on terms similar to those provided in its March 14, 2013 counter-proposal.  On April 1, 2013, almost a month after Philips negotiated his new position with the surviving entity, Inergy Midstream agreed to a 100% unit-for-unit exchange with a premium not to exceed 5% and a one-time cash payment in an amount not to exceed $25 million.  From March through May of 2013 **no increase** in the Exchange Ratio was negotiated between the parties.

**C.     The Crestwood Conflicts Committee Lacks Independence**

51.     On April 15, 2013, almost two months after Philips had already negotiated for himself a position with the surviving entity and material terms on price were agreed to between Crestwood, First Reserve and Inergy Midstream, the Board authorized the Crestwood Conflicts Committee to evaluate and consider granting "Special Approval" of the Proposed Transaction. The Board's rationale for taking such action included the "**potential conflicts of interest**" that

existed within the Proposed Transaction.  However, prior to April the Crestwood Conflicts Committee did not have authorization from the Board to participate in the process or secure its own financial advisor.  Following this meeting, the Crestwood Conflicts Committee retained Evercore to act as its financial advisor.

52.     Even while the Crestwood Conflicts Committee was authorized to evaluate and consider the Proposed Transaction, on April 21st and April 22nd, Philips held further discussions alone with Sherman regarding **key issues** raised in the merger documents.  Following this meeting, and without any input, the Crestwood Conflicts Committee was informed that these discussions took place.

53.     On April 24, 2013, the Crestwood Conflicts Committee instructed Evercore to reach out to Crestwood management to discuss improving the terms of the Proposed Transaction. Specifically, the Crestwood Conflicts Committee sought increased consideration to unitholders and the inclusion of a "majority-of-the-minority" provision in the Merger Agreement that would allow Crestwood's minority shareholders, excluding the Crestwood Affiliated Entities, a meaningful vote on the Proposed Transaction.

54.     The Crestwood Conflicts Committees' efforts were immediately thwarted by Philips.  On April 29, 2013, the Crestwood Conflicts Committee, First Reserve and Crestwood management held a meeting to discuss the Committee's Proposals.  Philips communicated that "[he] was concern[ed] with regard to the request by the Crestwood Conflicts Committee for additional consideration for the unitholders other than the Crestwood Affiliated Entities" and that "he did not believe that it would be feasible to request that the proposed merger be submitted for approval by a majority of the units held by the unitholders other than the Crestwood Affiliated Entities given the advance stage of the negotiations with Inergy . . ." Philips' refusal to consider

these modest Proposals demonstrates that Philips lacked independence and breached his duty of loyalty to Crestwood's unitholders.

55.     On April 30, 2013, the Crestwood Conflicts Committee considered an alternative proposal made by Philips pursuant to which the Crestwood Affiliated Entities would forego receiving a one-time payment of $25 million, in return for the Crestwood Conflicts Committee abandoning its strategy to seek either the inclusion of a "majority-of-the-minority" provision in the Merger Agreement or increased consideration from Inergy Midstream.

56.     In response to Philips' proposal, the Crestwood Conflicts Committee made a counter-proposal pursuant to which Crestwood Holdings would forego the one-time cash payment of $25 million and would provide an additional cash payment of $15 million to all Crestwood's public unitholders, which would be affected by Crestwood Affiliated Entities reducing their Exchange Ratio under the Proposed Transaction and a corresponding increase in the Exchange Ratio to Crestwood common unitholders.  Instead of immediately responding to the Crestwood Conflicts Committee's Proposals, Philips instead decided to nothing until he finalized the financial terms of the Proposed Transaction with Inergy Midstream.

57.     On May 3, 2013, Philips met with Sherman without either the Crestwood Conflicts Committee or Evercore present.  Philips confirmed and finalized the financial terms contained in the Merger Agreement.  Defendant Philips did not discuss with Sherman any of the modest Proposals recommended by the Crestwood Conflicts Committee.  Instead, he simply confirmed the terms that were agreed upon almost two month prior to the Crestwood Conflicts Committee receiving authority to consider the Proposed Transaction.  Following this meeting, Philips informed the Crestwood Conflicts Committee in response to their counter-proposal that

the Crestwood Affiliated Entities would forego the cash consideration it was to receive and would provide a $10 million dollar cash payment to Crestwood common unitholders.

**D.      The Proposed Transaction Is Announced**

58.      On May 6, 2013, Crestwood and Inergy Midstream jointly issued a press release announcing they had entered into the Merger Agreement.  The press release stated, in relevant part, that:

> **HOUSTON, TX. and KANSAS CITY, MO. –** May 6, 2013 – Crestwood Midstream Partners LP (NYSE: CMLP) ("Crestwood Midstream") and Crestwood Holdings LLC ("Crestwood Holdings") (collectively, "Crestwood") and Inergy, L.P. (NYSE:NRGY) ("Inergy L.P.") and Inergy Midstream, L.P. (NYSE:NRGM) ("Inergy Midstream") (collectively, "Inergy") today announced the signing of definitive agreements to create a fully integrated midstream partnership with a total enterprise value of approximately $7 billion.
>
> The combination of Crestwood and Inergy creates a diverse platform of midstream assets providing broad-ranging services in the premier shale plays in North America including the Marcellus Shale, Bakken Shale, Eagle Ford Shale, Permian Basin, Powder River Basin Niobrara Shale, Utica Shale, Barnett Shale, Fayetteville Shale, Granite Wash, Haynesville Shale and Monterey Shale. The complementary services offered by Crestwood and Inergy create attractive operational and financial synergies. In addition, enhanced scale and diversification provide further financial flexibility to position the combined partnership to be a formidable competitor for major greenfield development and acquisition opportunities across the midstream value chain. Further, the combination of a significant portfolio of long-term, fee-based contracts with high-quality customers, coupled with a sizable backlog of organic capital opportunities across multiple geographies, provides meaningful visibility to long-term growth.
>
> Under the terms of the definitive transaction agreements, which have been approved by the boards of directors and independent committees of Crestwood and Inergy, the combination will be implemented through a series of transactions, which will result in Crestwood Holdings acquiring the general partner, and thus control, of Inergy L.P. ***Crestwood's Chairman, President and Chief Executive Officer, Robert G. Phillips, will lead Inergy L.P. following completion of the transactions, and will serve as Chairman, President and Chief Executive Officer of the combined company.*** Until all of the transactions have closed, Crestwood Midstream and Inergy Midstream will continue to operate as separate, independent companies. The terms of the agreements are as follows: Crestwood Holdings will acquire the general partner of Inergy L.P. and will contribute the general partner and incentive distribution rights of Crestwood Midstream to Inergy L.P. in exchange for Inergy L.P. common units. Separately, Crestwood

Midstream will be merged with a subsidiary of Inergy Midstream. In the merger, Crestwood Midstream unitholders will receive 1.070 common units of Inergy Midstream for each unit of Crestwood Midstream they own, representing a 5% premium to the 20-day volume weighted average price ("VWAP") of Crestwood Midstream's common units. Additionally, all Crestwood Midstream public unitholders other than Crestwood Holdings will receive a one-time cash payment at closing of the merger of approximately $35 million in the aggregate, or $1.03 per unit, $25 million of which will be payable by Inergy Midstream and approximately $10 million of which will be payable by Crestwood Holdings. Inergy Midstream and Inergy L.P. will continue to be listed on the NYSE under the ticker symbols NRGM and NRGY, respectively.

59.     As noted *supra*, Philips will serve as Chairman, President and CEO of the surviving entity.  Therefore, by virtue of his anticipated position with Inergy and his current role as CEO of Crestwood, Philips lacks independence.  In addition, Philips' refusal to consider the modest Proposals proposed by the Crestwood Conflicts Committee and the Committee's inability to negotiate terms independent of Philips demonstrates that the Board was controlled by Philips and lacked true independence to consider the Proposed Transaction.

60.     Following the consummation of the Proposed Transaction, Crestwood unitholders will be substantially diluted, owning approximately 24.4% of the combined company as disclosed in the Company's May 6, 2013 presentation (see chart below):



61.     The newly combined company arising from the Proposed Transaction will create a global leader in the midstream oil and natural gas industry.  As stated in the May 6, 2013 Crestwood and Inergy Midstream press release:

> Crestwood operates a first-class portfolio of shale-focused midstream assets, but our operational capabilities and services to our customers currently end at the tailgate of the processing plant. With this combination, we will truly begin to experience the power of the value chain growth strategy by offering our customers a more comprehensive and competitive suite of services that enables us to capture incremental fee opportunities that expand margins and maximize returns on investment.

62.     The consideration offered to Crestwood's public unitholders in the Proposed Transaction is unfair and grossly inadequate because, among other things, the intrinsic value of Crestwood's common units are materially in excess of the amount offered for those securities in the Proposed Transaction given the Company's prospects for future growth and earnings. According to the Company's May 6, 2013 press release, the Proposed Transaction is a strategic merger for Inergy Midstream, providing approximately "$15 to $20 million in synergies on an

annual run rate within the next 24 months[.]"  Despite these anticipated synergies inherent in the transaction for Inergy Midstream, the Board failed to secure a fair price for the Company, either for the intrinsic value of its assets or the value of the Company's assets to Inergy Midstream.

63.     The consideration to be received by Crestwood unitholders is valued at $25.58 per Crestwood unit based on Inergy Midstream's closing price as of May 3, 2013, the last day of trading prior to the announced of the Proposed Transaction; however, Eduardo Seda of Ladenburg Thalmann & Co. Inc. estimated Crestwood's price per unit at $32.50.

64.     Moreover, in agreeing to the Proposed Transaction, the Individual Defendants failed to negotiate a "collar" to protect the consideration offered in the form of units from any sudden sharp movements in the price of Inergy Midstream's units prior to the consummation of the Prosposed Transaction.  The absence of a collar places Crestwood's public unitholders at the mercy of the value of Inergy Midstream's units at the time the Proposed Transaction is effectuated, which may be affected by numerous factors and therefore have little or no relationship to the value of their Crestwood units at that time.

### E.     The Unreasonable Deal Protection Devices

65.     On May 9, 2013, the Company filed a Form 8-K with the Securities and Exchange Commission ("SEC") wherein it disclosed the terms of its Merger Agreement.  To the detriment of Crestwood unitholders, as part of the Merger Agreement, the Individual Defendants agreed to certain deal protection devices that operate conjunctively to lock-up the Proposed Transaction and ensure that no competing offers will emerge for the Company.

66.     First, the Merger Agreement contains a strict "no shop" provision prohibiting the Individual Defendants from taking any affirmative action to comply with their fiduciary duties to maximize unitholder value, including soliciting alternative acquisition proposals or business combinations.

67. Specifically, § 6.5 of the Merger Agreement includes a "no solicitation" provision precluding the Company from soliciting interest from other potential acquirers in order to procure a price in excess of the amount offered by Inergy Midstream.  Section 6.5(a) requires that the Company "immediately cease and terminate any solicitation, discussions or negotiations with any Person that may be ongoing with respect to or that may reasonably be expected to lead to an MLP Takeover Proposal[.]"  This provision is especially harmful to Crestwood unitholders in light of the fact that no go-shop period was agreed to by the Individual Defendants.

68. Similarly, §§ 6.5(b) and 6.5(d)(i)(D) of the Merger Agreement provide a matching rights provision, whereby the Company must promptly notify Inergy Midstream within twenty-four (24) hours should it receive an unsolicited competing acquisition proposal.  The Company must notify Inergy Midstream of the bidder's identity and the terms of the bidder's offer.  Thereafter, if the Board determines that the competing acquisition proposal constitutes a "Superior Proposal," § 6.5(d)(i)(D) requires the Board to grant Inergy Midstream five (5) calendar days to amend the terms of the Merger Agreement to make a counter-offer that the Company must consider in determining whether the competing bid still constitutes a "Superior Proposal."

69. The effect of these provisions is to prevent the Board from entering discussions or negotiations with other potential purchasers unless the Board can first determine that the competing acquisition proposal is, in fact, "superior," and even then, the Company must give Inergy Midstream five (5) calendar days to match the competing acquisition proposal.  Consequently, this provision prevents the Individual Defendants from exercising their fiduciary duties and precludes an opportunity for a potential purchaser to emerge.

70.    Additionally, the Merger Agreement provides that Crestwood must pay Inergy Midstream a termination fee of $50.8 million if the Company decides to pursue the competing offer.  This unreasonable termination fee will ensure that no competing offer will appear, as any competing bidder would essentially pay a premium for the right to provide the unitholders with a superior offer.

71.    Finally, in an effort to further lock up the Proposed Transaction, the Crestwood Affiliated Entities holding 19,681,194 Crestwood common units and 6,341,707 Class D units, representing together 43.29% of Crestwood's total voting power have entered into the Voting Agreement pursuant to which they have agreed to vote their units in favor of the Proposed Transaction.  This Voting Agreement all but ensures that no competing bidder will emerge to acquire the Company.

**F.    The Individual Defendants Have Failed To Disclose Material Information Regarding The Proposed Transaction**

72.    On May 29, 2013, Inergy Midstream filed the Registration Statement with the SEC in connection with the Proposed Transaction.  The Registration Statement, however, fails to provide the Company's unitholders with all material information concerning the Proposed Transaction, thus precluding Crestwood unitholders from making an informed decision.

73.    Specifically, the Registration Statement fails to provide material information concerning the process conducted by Crestwood and the events leading up to the Proposed Transaction with Inergy Midstream.  In particular, the Registration Statement fails to disclose the following information:

a.    When was the Crestwood Conflicts Committee formed, the basis for determining the independence of each director placed on the committee and the names of members of the Board who participated on the Crestwood Conflicts Committee;

      b.     Following the March 12, 2013 proposal by Greenhill, provided that Philips would serve as Chairman, President and CEO, the Registration Statement must provide the rationale for the Board allowing Philips to lead negotiations with Inergy Midstream for the Company;

      c.     Who were the representatives from Crestwood present at the March 15, 2013 and April 1, 2013 meeting between Crestwood, Inergy Midstream, First Reserve, Citi and Greenhill;

      d.     The basis for determining that a one-time cash payment not exceeding $25 million was sufficient to curb Crestwood unitholders from incurring distribution dilution as a result of the merger through 2015;

      e.     The "items" communicated by the Crestwood Conflicts Committee to Crestwood management on April 26, 2013;

      f.     The rationale for the Crestwood Conflicts Committee waiting almost two-months before retaining Evercore; and explain the process by which the Crestwood Conflicts Committee chose Evercore to serve as its financial advisor;

      g.     The basis for Crestwood Conflicts Committee's decision not to pursue additional consideration for Crestwood unitholders independent of Philips;

      h.     The basis for the Crestwood Conflicts Committee's decision not to pursue or insist upon a "majority-of-the-minority" provision to be included in the Merger Agreement; and

      i.     The Board's basis for not negotiating a "collar" to protect Crestwood unitholders from fluctuations in Inergy Midstream's unit price.

74.     Additionally, the Registration Statement does not disclose the underlying methodologies, key data and inputs relied upon by Evercore in rendering its Fairness Opinion. This material information must be disclosed so that unitholders can properly assess the credibility of the various analyses performed by Evercore.   At a minimum, the Registration Statement must disclose, *inter alia*:

a.     In the *Discounted Cash Flow Analysis* ("DCF Analysis") performed by Evercore, the Registration Statement disclosed that the DCF Analysis resulted in an implied value of consideration of $23.50 to $28.00 per Crestwood common unit for implied present value and implied value of consideration of $23.71 to $37.50 per Crestwood common unit for standalone distributions.   The Registration Statement, however, must disclose the implied exchange ratios;

b.     In the DCF Analysis performed by Evercore, the Registration Statement fails to identify the unlevered free cash flows provided to Evercore by Crestwood management;

c.     In the DCF Analysis performed by Evercore, the Registration Statement fails to disclose the comparable companies used to derive the range of discount rates or perpetuity growth rates for this analysis;

d.     In the *Precedent M&A Transactions Analysis* performed by Evercore, the Registration Statement fails to disclose the LTM EBITDA and LTM DCF used by Evercore, which is a necessary component in the calculation of implied prices in the *Precedent M&A Transactions Analysis*;

e.     In the *Precedent M&A Transactions Analysis* performed by Evercore, the Registration Statement fails to disclose the transactions considered and the financial characteristics of each selected transaction (*i.e.* transaction size, revenue, profit margins, and

EBITDA margins for those selected companies.)  Such a failure makes it impossible for shareholders to compare the selected transactions to Crestwood;

       f.     In the *Peer Group Trading Analysis* performed by Evercore, the Registration Statement provides that Evercore calculated: (i) the ratios of EV to estimated 2013 and 2014 EBTIDA for the selected publicly-traded MLPs and (ii) the ratios of the EV to estimated 2013 and 2014 EBITDA for Crestwood.  The Registration Statement must disclose these calculations to shareholders so that unitholders may assess for themselves how the public market values Crestwood's equity units; and

       g.     In the *Premiums Paid Analysis* performed by Evercore, the Registration Statement fails to disclose the premiums for each of the seven MLP unit-for-unit transactions observed.

75.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Crestwood unitholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff and the Class Against the Individual Defendants**
**for Breach of Fiduciary Duties**

76.     Plaintiff repeats and realleges each allegation set forth herein.

77.     The Individual Defendants have violated fiduciary duties of care, loyalty, good faith and complete candor owed to Crestwood unitholders.

78.     By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in Crestwood.

79.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty, good faith, complete candor and independence owed to Crestwood unitholders because, among other reasons, they failed to take steps to maximize the value of Crestwood's unitholders, by, among other things, failing to adequately consider potential acquirers, instead favoring their own, or their fellow directors' or executive officers' interests to secure all possible benefits with a friendly suitor, rather than protect the best interests of Crestwood's unitholders.  Moreover, the Individual Defendants failed to secure safeguards on behalf of the Company's unitholders against the decline in the value of the stock component of the consideration to be paid to Crestwood's unitholders in the Proposed Transaction.

80.     Moreover, the Individual Defendants have failed to fully disclose to Plaintiff and the Class all material information necessary to make an informed decision regarding the Proposed Transaction.

81.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

82.     As a result of the actions of Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Crestwood's assets and businesses and have been and will be prevented from obtaining a fair price for their common units.

83.     Unless the Court enjoins Defendants, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the members of the Class.

84.     Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

### COUNT II

**On Behalf of Plaintiff and the Class Against Inergy Midstream, NRGM, Inergy, Merger Sub, Crestwood Holdings and Crestwood Gas for Aiding and Abetting the Individual Defendants' Breach of Fiduciary Duty**

85.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

86.     Inergy Midstream, NRGM, Inergy, Merger Sub, Crestwood Holdings and Crestwood Gas have acted and are acting with knowledge of, or with reckless disregard to, the fact that the Individual Defendants are in breach of their fiduciary duties to Crestwood's unitholders, and have participated in such breaches of fiduciary duties.

87.     Inergy Midstream, NRGM, Inergy, Merger Sub, Crestwood Holdings and Crestwood Gas knowingly aided and abetted the Individual Defendants' wrongdoing alleged herein.  In so doing, Inergy Midstream, NRGM, Inergy, Merger Sub, Crestwood Holdings and Crestwood Gas rendered substantial assistance in order to effectuate the Individual Defendants' plan to consummate the Proposed Transaction in breach of their fiduciary duties.

### RELIEF REQUESTED

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally, as follows:

A.     Declaring this action to be a Class Action and certifying Plaintiff as the Class representatives and his counsel as Class counsel;

B.     Enjoining Defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Transaction, unless and until the Company

adopts and implements a procedure or process to obtain a merger agreement providing the best possible terms for unitholders;

C.      Rescinding, to the extent already implemented, the Proposed Transaction or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D.      Ordering Defendants to amend the merger agreement to include a provision that any vote be conditioned on a majority of Crestwood's minority shareholders voting in favor of the Proposed Transaction;

E.      Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of the Individual Defendants wrongdoing;

F.      Awarding Plaintiff the costs and disbursements of this action, including reasonable allowance for attorneys' and expert fees and expenses; and

G.      Granting Plaintiff and other members of the Class such further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  June 5, 2013

Respectfully submitted

**THE MCCLEERY LAW FIRM**

By: _/s/ Stephen E. McCleery_
      Stephen E. McCleery
State Bar of Texas No. 00794258
Federal ID No. 21007
5020 Montrose, 6th Floor
Houston, Texas 77006
Tel: 713-622-3555
Fax: 713-224-8555
Email: Smccleery@mccleerylaw.com

*Attorneys for Plaintiffs*

**FARUQI & FARUQI, LLP**
Juan E. Monteverde
David M. Sborz
369 Lexington Ave., Tenth Floor
New York, NY  10017
Tel:  212-983-9330
Fax:  212-983-9331
Email:jmonteverde@faruqilaw.com
Email: dsborz@faruqilaw.com

*Attorneys for Plaintiff*